**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
                                                    :
**UNITED STATES OF AMERICA**          :
                                                    :          <u>**OPINION AND ORDER**</u>
                                                    :
          - against -                              :          **01 Cr. 1026 (SAS)**
                                                    :
                                                    :
**OSAMA AWADALLAH,**                  :
                                                    :
                    **Defendant.**            :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

            At a pretrial conference on May 24, 2005, the Court made an oral

ruling granting Awadallah's motion to preclude certain proposed testimony.[1]  This

Opinion and Order formalizes that ruling in a written decision.

**I.        FACTUAL BACKGROUND**

            **A.        The Charges Against Osama Awadallah**

            Awadallah is a lawful permanent resident of the United States and a

citizen of Jordan.  Awadallah entered this country in April 1999, at the age of 19,

with the goal of becoming a United States citizen.  In the Fall of 2001, Awadallah

was living in San Diego, and beginning his second year at Grossmont College,

_____

            [1]        *See generally* Transcript of May 24, 2005.  The Court explicitly noted
that a written decision would follow.  *See id.* at 17.

1

studying English as a Second Language.[2]

On September 20, 2001, a group of FBI agents investigating the terrorist attacks of September 11, 2001 approached Awadallah at his home.[3] Awadallah was a subject of the investigation because agents had found a scrap of paper with the words "Osama 589-5316" inside a car abandoned by Nawaf Al-Hazmi, one of the hijackers of American Airlines Flight 77, at Washington Dulles International Airport on the afternoon of September 11. The FBI had subsequently matched this number to a phone at a residence where Awadallah had briefly lived nearly two years earlier.[4] Awadallah accompanied the agents to the FBI office, where he was questioned for approximately six hours.[5] At the end of the day, he was returned to his home.[6]

On the morning of September 21, 2001, Awadallah was again brought

---

[2]    *See United States v. Awadallah,* 202 F. Supp. 2d 17 (S.D.N.Y. 2002) ("*Awadallah I*").

[3]    *See United States v. Awadallah,* 202 F. Supp. 2d 82, 86 (S.D.N.Y. 2002) ("*Awadallah II*").

[4]    *See id.*

[5]    *See id.* at 92.

[6]    *See id.* at 93.

to the FBI office, where he was given a polygraph test.[7] The agent administering the test asked Awadallah, among other things, whether he had participated in or had advance knowledge of the September 11 attacks. Awadallah was told that the test showed that his answers — "no" to both questions — were false.[8] The agents' questioning of Awadallah became heated and aggressive.[9]

While Awadallah was being questioned, an Assistant United States Attorney in New York was kept apprised of the situation. At approximately 11:00 a.m., the AUSA instructed the agents to arrest Awadallah as a material witness, pursuant to 18 U.S.C. § 3144.[10] Awadallah was handcuffed, fingerprinted and taken to the San Diego MCC.[11] A warrant was issued for Awadallah's arrest as a material witness that afternoon.[12]

---

[7] *See id.*

[8] *See id.*

[9] *See id.* at 94.

[10] The material witness statute, 18 U.S.C. § 3144, provides that "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person. . . ."

[11] *See Awadallah II* at 94.

[12] *See id.*

Over the following weeks, between September 21 and October 10, Awadallah was held in solitary confinement, and generally was treated as a high security federal prisoner.[13]  On October 10, Awadallah was brought before a grand jury as a material witness.  During his grand jury testimony, Awadallah was dressed in prison clothes and handcuffed to a chair.[14]  Two government attorneys — including AUSA Robin Baker, who is now prosecuting this case — conducted Awadallah's questioning.[15]

During the course of Awadallah's grand jury testimony, the prosecutors repeatedly asked Awadallah about his knowledge of Al-Hazmi.[16] Awadallah answered that he had met Al-Hazmi while working at a gas station in San Diego in the Spring of 2000, and had last seen him in December 2000, and described a number of innocuous encounters with Al-Hazmi.  The prosecutors also asked Awadallah about another man whom Awadallah had seen in Al-Hazmi's

_____

[13]     *See United States v. Awadallah*, 202 F. Supp. 2d 55, 59-60 (S.D.N.Y. 2002) (reading the allegations regarding Awadallah's confinement in the light most favorable to the Government, and declining to make findings of fact on disputed issues).

[14]     *See Awadallah I* at 19.

[15]     *See id.*

[16]     Awadallah's grand jury testimony is described in detail in *Awadallah I*, at 25-34.

company – Khalid Al-Midhar, another of the hijackers. Awadallah described Al-Midhar's appearance, but said that he did not know the man's name. The Government then showed Awadallah a photocopy of his college exam booklet, in which Al-Midhar's name was written. Awadallah claimed that the handwriting was not his.

Awadallah appeared before the grand jury a second time on October 15. At that time, he testified that he was able to recall that the other man with Al-Hazmi had been introduced to him as "Khalid." Awadallah claimed that he had not remembered that he knew that name until after his October 10 testimony. Awadallah also testified that the handwriting in his exam booklet was his. He claimed that he had been confused on October 10, and had not recognized the handwriting as his.

Awadallah is now charged with two counts of perjury arising from his grand jury testimony: (1) his denial that he knew Al-Midhar's name, and (2) his denial that the handwriting in his exam booklet was his. The Government has never charged Awadallah with knowledge of or participation in the September 11 attacks. Awadallah has been free on bail since November 2001. During the past three years, he has graduated from Grossmont College and is now a full-time student at San Diego State University.

## B. The Government's Proposal to Call Grand Jurors as Witnesses

At a pretrial conference held on May 16, 2005, the Government submitted a supplemental list of witnesses that it might call at trial. The purpose of this list was to apprise potential jurors of names they might encounter during the trial. The defense expressed some surprise at the names on the supplemental list and asked the Government to identify them. The Government declined, stating that it was not required to name its witnesses prior to trial.[17] The Court then ordered the Government to identify these potential witnesses, and the Government disclosed that it intended to call as trial witnesses several members of the grand jury that had observed Awadallah's testimony and returned the indictment against him.

Awadallah has stated that his defense at trial will be "that any incorrect statements he may have made in his October 10 grand jury testimony were not knowingly made [but were] the result of memory lapse, misunderstanding, exhaustion, confusion and intimidation."[18] To rebut this defense, the Government plans to call the grand jurors to testify to their impressions of Awadallah as he testified – namely that "he neither appeared nor behaved as if he were confused or

---

[17]   The Government never argued that there was any risk of harm to its witnesses if disclosure was required.

[18]   Defendant's Requests to Charge No. 3, at 5.

conversely that he appeared lucid or coherent."[19]

      Unbeknownst to the Court or counsel, the Government had already contacted and interviewed many or all of the members of the grand jury. After learning of this, Awadallah's attorney, Jesse Berman, requested permission to contact the grand jurors to determine whether he might wish to call any of them as trial witnesses. I granted Mr. Berman's request. I wrote a letter to each grand juror (which was mailed by the Government) inviting those who were willing to be interviewed by Mr. Berman to contact the Court.[20]

      Nine members of the grand jury contacted the Court's staff. Six jurors were willing to be contacted by Mr. Berman; one juror informed the Court that he was not willing to talk to Mr. Berman; two more jurors were unwilling to be contacted by Mr. Berman, but asked that the Court give them Mr. Berman's number, so they could contact him if they chose.

      Mr. Berman has now interviewed a number of the grand jurors. At a pretrial conference held on May 23, 2005, Mr. Berman reported that several of the

---

[19]    *See* Government's Letter of May 23, 2005.

[20]    *See United States v. Radonjich*, 1 F.3d 117, 119 (2d Cir. 1993) (describing a similar procedure followed by Judge I. Leo Glasser of the Eastern District of New York).

grand jurors he interviewed had only a limited recollection of Awadallah. Mr.

Berman reported that some grand jurors told him that when the Government

interviewed them, they could not remember Awadallah until the Government

showed them a photograph of the defendant to refresh their recollection. One

juror, in particular, told Mr. Berman that she could not recall the events of October

2001 unless she could review the notes she took when sitting as a grand juror. The

prosecutors confirmed that the grand juror made the same statement to them. The

Government then retrieved the juror's notes, but rather than submit them to the

Court or provide them first to the grand juror, the Government, through its case

agent, reviewed the juror's notes.[21]

        During the May 16, 2005 conference (and prior to the briefing of this

issue), I made a preliminary ruling as to the admissibility of the proposed testimony

of the grand jurors. I ruled that the grand jurors may testify as to the physical

conditions of the room during Awadallah's grand jury testimony, Awadallah's

physical appearance, and the behavior and manner of the prosecutor. However, I

ruled that the grand jurors may not testify as to whether, in their opinion,

_____

        [21]     As of May 24, 2005, the date of oral argument on this motion, the
Government has not yet informed the Court whether it has given the notes to the
juror. They have now been produced to both the Court and defense counsel.

Awadallah's testimony was knowingly false, or whether Awadallah appeared "confused" during his testimony.[22]

## II.      RELIEF SOUGHT BY EACH PARTY

Both parties now request that the Court revisit its May 16 ruling. By letter dated May 23, 2005, the Government argues that the Court should reconsider its ruling that the grand jurors may not testify as to whether Awadallah appeared confused. Awadallah, also by letter dated May 23, 2005, has moved to preclude all grand juror testimony. Awadallah cites Federal Rules of Evidence 606(b) and 403, neither of which were cited at the May 16 conference.[23]

In its motion seeking reconsideration, the Government argues that the grand jurors' testimony should not be precluded under Federal Rule of Evidence 701 as improper opinion testimony, or under Rule 704 on the ground that it bears on an "ultimate issue" in the case. The Government correctly argues that the fact that a lay witness's opinion testimony might go to an ultimate issue in this case does not, by itself, mean that it must be precluded. Rule 704(a) provides that, "[e]xcept as provided in subdivision (b), testimony in the form of an opinion or

---

[22]      *See* Transcript of May 16, 2005 at 31-32.

[23]      It was not until the May 16 conference that defense counsel first learned of the Government's intention to call grand jurors as trial witnesses.

inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704(b), which forbids expert witnesses in criminal cases from stating "an opinion or inference" as to "whether the defendant did or did not have the mental state or condition constituting an element of the crime charged" on the ground that such "ultimate issues are matters for the trier of fact alone," does not apply to lay opinion testimony.[24]

However, under Rule 701, lay opinion testimony is "limited to those opinions or inferences that are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of the fact in issue." In certain circumstances, it may be appropriate for lay witnesses to testify as to their opinion of a person's mood or state of mind, as an acceptable shorthand for their perceptions of that person's outward physical characteristics and conduct.[25] However,

---

[24]     *See United States v. Rea,* 958 F.2d 1206, 1214 (2d Cir. 1992).

[25]     *See, e.g., United States v. Welch,* 745 F.2d 614, 618 (10th Cir. 1984) (lay opinion testimony that defendant was "angry" but appeared "lucid" was admissible to counter defense that defendant could not form specific intent to carry out threats of violence); *Kerry Coal Co. v. United Mine Workers*, 637 F.2d 957, 967 (3d Cir. 1981) (testimony that plaintiff's employees were "nervous and afraid" was mere shorthand report of witness's observations of employee reactions);  4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.02 (2005) (approving testimony that a person was "lucid" or "coherent" as an acceptable "shorthand" for the witnesses' observations of the person's outward

a witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701 because there is no way for the court to assess whether it is rationally based on the witness's perceptions.[26]

Moreover, "a lay witness's testimony in the form of an opinion is permissible only when it is helpful to understanding the witness's testimony or to the determination of a fact in issue. If the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible."[27]

To the extent that a grand juror would be able to support his or her opinion that Awadallah was not confused (or that he was confused) by reference to his or her perceptions of objective manifestations of confusion or composure, such testimony would not be precluded by Rule 701.[28] Mere unfounded speculation

_____

physical condition).

[26]     *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002) (quotations and ellipses omitted).

[27]     *United States v. Henke*, 222 F.3d 633, 641 (9th Cir. 2000). *See also Rea*, 958 F.2d at 1219 (holding that lay opinion that defendant "must have known" about conspiracy, although admissible under Rule 704, should have been excluded under Rule 701 because the jury had all the facts on which witness's opinion was based before it and should draw its own inferences).

[28]     I note, however, that there is some question whether any grand juror's impressions of Awadallah can be "helpful" under Rule 701. *First*, three and a half

about Awadallah's state of mind, however, would not be admissible.[29]  Moreover,

to the extent that a grand juror's opinion on Awadallah's state of mind is based

solely on what was said to and by Awadallah, rather than on the juror's

observations of Awadallah's facial expression or manner of speech, such an

opinion would not be helpful to the trial jury.  The trial jury will read the transcript

of the grand jury proceedings, and can draw its own inferences from Awadallah's

words.

Without a proffer of the proposed testimony, it is impossible to know

whether it would be based on objective perceptions, or on information that would

not otherwise be available to the jury.  It would therefore be premature to exclude

_____

years have passed since they witnessed Awadallah's testimony.  *Second,*
Awadallah was shackled during his grand jury proceedings.  *Cf. Deck v. Missouri,*
No. 04-5293, 2005 WL 1200394, at *8 (S. Ct. May 23, 2005) ("The appearance of
the offender during the penalty phase in shackles, however, almost inevitably
implies to a jury, as a matter of common sense, that court authorities consider the
offender a danger to the community. . . .  It also almost inevitably affects adversely
the jury's perception of the character of the defendant. . . .  And it thereby
inevitably undermines the jury's ability to weigh accurately all relevant
considerations — considerations that are often unquantifiable and elusive").  The
grand jurors' perception of Awadallah's intent and state of mind may well have
been affected by the sight of his shackles.

[29]    *See Rea,* 958 F.2d at 1218-19 (holding that lay opinion that defendant
"must have known" about conspiracy  should have been excluded under Rule 701
because no foundation had been laid to indicate that the witness's testimony was
based on his own perceptions).

the testimony on that ground. To the extent that the Court's May 16 preliminary ruling was based on Rules 701 and 704, it was therefore in error. However, for the reasons set forth below, there are other considerations requiring that certain portions of the proposed testimony be precluded.

## III.    DISCUSSION

At the outset, I note that the Government's plan is an unusual one. In a number of circuits it is common practice in grand jury perjury cases for the prosecution to prove the element of *materiality* by calling a member of the grand jury to testify to the scope and purposes of the grand jury's investigation.[30] The treatise *Grand Jury Law and Practice*, cited by the Government in its May 24 letter to the Court, states that grand jurors commonly testify to the scope of their investigation in order to prove materiality. I note, however, that the same treatise, in its discussion of "the strict proof requirement imposed on the issue of intentional falsehood" does not suggest that it is appropriate to call grand jurors to testify as to

_____

[30]    *See, e.g., United States v. Conley,* 186 F.3d 7 (1st Cir. 1999); *United States v. Leon-Reyes,* 177 F.3d 816 (9th Cir. 1999). *See also* Sara Sun Beale et al., *Grand Jury Law and Practice* §11.7 (2d ed. 2004). However, this is not the normal practice in the Second Circuit. In this Circuit, materiality is typically proven by the testimony of an investigating agent (as the Government plans to do in this case). *See, e.g., United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997).

the defendant's demeanor.[31]

Only one reported case has been found by either party or this Court in which a grand juror testified at trial as to the defendant's demeanor before the grand jury.[32]  It is impossible to discern from the passing reference in a footnote of that decision what objections were raised at either the trial or appellate courts to the testimony of the grand juror.  Given that the case is not from this Circuit (or from the Supreme Court), and the absence of any discussion as to what arguments were raised on appeal, this decision cannot bind this Court.

Suffice it to say that it is rare indeed for the Government to call a grand juror to testify as to his or her impressions of the defendant, or his questioning before the grand jury, in order to prove the element of *knowledge of falsity*.  Of course, a trial strategy is not improper merely because it is innovative; but, when such a strategy has almost never been used, there is generally a good reason.  In fact, the Government's proposal runs afoul of two Federal Rules of

_____

[31]     *See* Beale et al., *Grand Jury Law and Practice* §§ 11.6-7.   The same is true of the National Lawyer's Guild's *Representation of Witnesses Before Federal Grand Juries*, §15:14 (4th ed. 2005); Paul S. Diamond, *Federal Grand Jury Practice and Procedure*, § 12.02 (2001).

[32]     *See United States v. Frazier,* 944  F.2d 820, 822 n.1  (11th Cir. 1991).

Evidence: 606(b) and 403.[33]

### A. Rule 606(b) of the Federal Rules of Evidence

Rule 606(b) provides that

> Upon an inquiry into the validity of a verdict *or indictment*, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict *or indictment* or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.[34]

"The values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment."[35] Two of the rule's purposes are relevant

---

[33] Awadallah also cites Federal Rule of Criminal Procedure 6(e), which imposes strict obligations of secrecy on grand jury proceedings. However, Rule 6(e)(3)(A)(i) makes an exception to the general rule of grand jury secrecy, to permit "[d]isclosure of a grand jury matter [] other than the grand jury's deliberations or any grand juror's vote" to "an attorney for the government for use in performing that attorney's duty." *See Conley*, 186 F.3d at 24 (holding that Rule 6(e)(3)(A)(i) permits prosecutors to call grand jurors to testify as witnesses).

[34] Federal Rule of Evidence 606(b) (emphasis added).

[35] *Id.*, Advisory Committee Note.

here. *First,* the rule is intended to protect the peace and privacy of jurors who have done their service: "'Jurors have a right to go home at the end of the trial . . . secure in the belief that they will not be harassed.'"[36] *Second,* the rule protects the integrity of the jury system: "'[i]f evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference.'"[37] These concerns apply no less to grand jurors than to trial jurors.[38]

Rule 606(b) applies regardless of whether the juror's testimony is sought in order to attack *or to support* the validity of the verdict or indictment.[39] It

---

[36] *Munafo v. Metropolitan Transp. Auth.,* 381 F.3d 99 (2d Cir. 2004) (quoting *Radonjich*, 1 F.3d at 120).

[37] *Id.* at 109 (quoting *McDonald v. Pless*, 238 U.S. 264, 267 (1915)).

[38] *See* 3-606 Weinstein's Federal Evidence § 606.07. *See also* Government's Letter of May 24, 2005 at 4 (conceding that Rule 606(b) applies to grand jurors).

[39] *See* 3 Weinstein's Federal Evidence § 606.04[2][a]. *Accord United States v. Cheek*, 94 F.3d 136, 143 (4th Cir. 1996); *United States v. Forman*, 990 F. Supp. 875 (E.D. Mich. 1997). *Cf. United States v. Barragan-Cepeda*, 29 F.3d 1378, 1380 (9th Cir. 1994) (holding that juror testimony "to determine *what* issues were decided in a prior proceeding" is not precluded by 606(b), because such testimony was not offered to impeach or confirm the validity of the verdict, but rather simply "to *rely* upon that verdict.") (emphasis added).

is hard to see how grand juror testimony could be admitted to support an indictment, but not to attack it: if the prosecution proffers such testimony in support of the indictment, the defense must be entitled to cross-examination, and an attack on the indictment becomes inevitable. The Second Circuit has not directly addressed this question, although in *United States v. Radonjich,* the court held that Rule 606(b) did not "by its terms" apply where a defendant charged with participation, as a former trial juror, in a scheme to accept money in exchange for voting to acquit, sought the testimony of his former co-jurors as to events in the jury room, in order to defend against those charges.[40] In that case, Rule 606(b) was not directly implicated, because the jurors' testimony was not sought either to attack or support their verdict, but rather for purposes entirely *unrelated* to the verdict's validity or invalidity. Nevertheless, the Second Circuit noted that the policy concerns underlying Rule 606(b) were implicated.[41]

In sum, I conclude that Rule 606(b) governs the proposed testimony. Nevertheless, for the following reasons, the Rule does not prohibit all testimony by grand jurors, but only testimony as to their subjective impressions.

---

[40]     1 F.3d at 120.

[41]     *See id.* ("Neither Pape nor the Government seeks to impeach the Gotti verdict. Nonetheless, a similar balancing of public and private interests is implicated.").

As I have noted, in other Circuits grand jurors regularly testify as to the scope of the grand jury's investigation. Testimony as to the factual background of the grand jury's investigation is not precluded by Rule 606(b), as it is not a "matter or statement occurring during the course of the jury's deliberations [n]or [does it relate] to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith."[42]

In this case, the Government seeks to elicit testimony as to the grand jurors' subjective impressions of Awadallah. The Government has stated, in its May 24 letter to the Court, that it intends to avoid eliciting any testimony regarding the grand jurors' decision to indict Awadallah. However, the grand jurors' subjective impressions of Awadallah and his questioning are inextricably intertwined with their decision. Essentially, the Government is seeking to elicit testimony as to the mental processes underlying the decision to indict Awadallah, in order to support his indictment. This is precisely the sort of testimony that Rule 606(b) forbids. If grand jurors were aware that they could be called to testify as to their mental processes that led to their decision to indict — years after the decision was

---

[42]     Rule 606(b).

made — it would inhibit their ability to engage in full and frank deliberation and interfere with their decision-making.  By contrast, such concerns are not implicated when a grand juror testifies as to the background and scope of an investigation.  Such testimony does not require the juror to revisit and justify his or her subjective impressions and mental processes.

The developments of recent days vividly demonstrate the wisdom of Rule 606(b).  Grand jurors whose service was completed three years ago have been drawn into this litigation.  Their privacy has been disturbed.  They have been subject to pressure from both sides to revisit the decisions they made in indicting Awadallah.  If the Court were to allow the proposed testimony of the grand jurors, it is possible that they would differ with one another as to their impressions of defendant's demeanor on the day he testified.  This raises the very matter addressed in the rule:  namely observations that "influenc[ed the juror] to assent to or dissent from the verdict or indictment."[43]

I note also that the Government has an unfair advantage with respect to the use of grand juror testimony.  Rule 6(e) permits the Government, but not defense counsel, to approach the grand jurors.  The Government was therefore able

---

[43]     *Id.*

to make the first contact with the grand jurors, outside the presence of defense counsel. The defense, by contrast, has been able to speak only with those grand jurors who affirmatively expressed a willingness to be contacted — and had to do so after those grand jurors had already spoken with, and had their recollections refreshed by, the Government. Moreover, the Government has a great advantage over the defense in its ability both to refresh the recollection of the grand jurors, and to assess their credibility and value as witnesses, for two reasons. *First*, the Government has access to the grand jurors' notes; and *second*, counsel for the prosecution was herself personally present in the grand jury room and had the opportunity to observe and interact with the grand jurors. This asymmetry does not, by itself, require that the evidence be excluded, but it is a further consideration supporting Rule 606(b)'s policy of excluding grand juror testimony.[44] For these reasons, the Court adheres to its earlier ruling that no grand juror may testify as to his or her impression of Awadallah's testimony in order to prove the element of *knowledge of falsity*.

### B. Rule 403 of the Federal Rules of Evidence

---

[44] The Government's superior access to the grand jurors is less of an unfair advantage to the extent that the grand jurors' testimony is limited to objective, largely uncontested issues, such as the scope of the investigation.

Federal Rule of Evidence 403 also requires that the grand jurors be precluded from testifying as to their subjective impressions of Awadallah's testimony. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." Here, the prejudicial effect of the proposed testimony substantially outweighs its probative value.

There are two potential sources of prejudice here. *First*, the trial jury is likely to identify with any grand juror who testifies — to regard the grand jurors as their peers and fellow jurors, and to treat the opinions of the grand jurors as if they were the opinions of members of the trial jury, not those of ordinary witnesses.[45] There is a real risk that the trial jury will give undue weight to the testimony of the grand jurors. Similarly, the trial jury may well defer to what they will perceive as the grand jurors' determination that Awadallah's testimony was knowingly false, rather than making its own determination. Rule 403 requires that evidence be excluded, even if relevant, if the jury will place undue weight on that

---

[45] In *Conley*, the First Circuit upheld the trial court's decision to admit the testimony of a grand juror, over the defendant's argument that such testimony was prejudicial. *See Conley,* 186 F.3d at 16. In *Conley*, however, the grand juror testified only as to the scope of the investigation, not her opinion as to the defendant's state of mind, and the risk of prejudice was therefore much smaller. *See id.*

evidence, to the neglect of their duty to evaluate the trial evidence for themselves.[46]

The danger of prejudice is heightened here because the proposed testimony goes to

an ultimate issue in the case: any testimony from a grand juror that Awadallah

appeared not to be confused, or that he appeared lucid and coherent, is tantamount

to a statement that, in the grand juror's opinion, Awadallah's statements were

knowingly false.[47]

---

[46] *See, e.g., Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1357 (4th Cir. 1995) (excluding from evidence under Rule 403 a report prepared by the Virginia Employment Commission that concluded that plaintiff was not entitled to unemployment benefits because the jury was likely to place undue weight on it); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994) (probative value of letter opinion substantially outweighed by danger of unfair prejudice because opinion "decided the precise issue before the jury . . . thereby making it likely that the jury would have placed undue weight on such evidence."); *United States v. Perez*, No. 01 Cr. 848, 2002 WL 31368108, at *2 (S.D.N.Y. Oct. 21, 2002) (precluding cross-examination of investigator as to court's determination that witness had not been credible in his testimony at a pretrial hearing because jury was likely to place undue weight on that finding); *Lee v. Executive Airlines, Inc*., 31 F. Supp. 2d 1355, 1358 (D. Fla. 1998) (excluding EEOC inspector's report under Rule 403 because "it is distinctly possible that the jury will attach undue weight to the authoritative and personalized conclusions of the EEOC inspector, thus creating unfair prejudice.").

[47] As noted above, the fact that such testimony goes to an ultimate issue in this case does not, by itself, call for its exclusion under Rules 701 or 704 (or any other rule of evidence). It is the fact that the trial jurors are likely to place undue weight on the grand jurors' testimony, rather than treat it as they would the testimony of ordinary witnesses, that makes such testimony prejudicial and requires its exclusion under Rule 403. As discussed below, to the extent that the grand jurors' proposed testimony goes to the objective, external circumstances of Awadallah's testimony, and not to the ultimate issue of his intent or knowledge, it is less prejudicial, and therefore admissible under Rule 403. *See Hester v. BIC Corp.*,

*Second*, the introduction of grand juror testimony is likely to confuse

the different standards of proof that apply to a trial jury and a grand jury.  The trial

jury would naturally interpret the grand jurors' testimony as proof that Awadallah

has already been found to have committed perjury by a jury of his and their peers.

One of the fundamental risks at a criminal trial is that the jury will infer the

defendant's guilt from the fact of his indictment. Courts always stress that an

indictment is merely a charge or accusation and that the Government must now

prove the defendant's guilt beyond a reasonable doubt.[48]  The Government's

proposed use of grand jurors to testify, in essence, as to their opinion of

Awadallah's guilt and their reasons for indicting him, is squarely at odds with that

policy.[49]  While the Court could give the trial jury a curative instruction, it is very

---

225 F.3d 178, 182 (2d Cir. 2000) ("The likely benefits of lay opinion testimony
must outweigh its costs.  Lay opinion testimony may be helpful even if it bears on
the ultimate issue in the case . . .  but the costs of lay opinion increase and the
benefits diminish the closer the opinion approaches the crucial issues in the case.
This is because [of] the risk [] that the opinion may distract jurors from their task of
drawing an independent conclusion as to an ultimate issue in the case.") (citations
and quotations omitted).

[48]    *See* 1 Sand, *Federal Jury Instructions - Criminal* ¶ 3.01 ("I remind
you that the indictment itself is not evidence.  It merely describes the charges made
against the defendant.  It is an accusation.  It may not be considered by you as any
evidence of the guilt of the defendant.")

[49]    By contrast, this risk is not present when a grand juror testifies to the
scope and background of the investigation, which is generally not contested.

doubtful that any such instruction could be effective. It is always difficult to ensure that a jury will not infer a defendant's guilt from the fact of his indictment; to permit the grand jurors who returned that indictment to testify to their opinions of the defendant would unfairly heighten that risk.

In its May 23 letter, the Government argues that it will be prejudiced by the exclusion of the grand jurors' testimony.[50] This argument is not persuasive for two reasons. *First*, the Government can call on several other witnesses who were present during the grand jury proceedings, including the interpreter, the court reporter, or an attorney with the Department of Justice who is not one of the attorneys now prosecuting the case. *Second*, given the novelty of the Government's proposed strategy, it is beyond cavil that the Government has tried hundreds if not thousands of grand jury perjury cases without resorting to this unfair and prejudicial tactic.

C.      **The Permitted Testimony**

For the foregoing reasons, the grand jurors are precluded from testifying as to their subjective impressions. However, the grand jurors are not precluded from testifying as to objective physical conditions and events in the

_____

[50]      *See* Government's Letter of May 23, 2005 at 6.

may draw its own conclusions from the grand jurors' testimony as to physical facts; the danger that the trial jurors will simply defer to the grand jury's opinion of Awadallah's intent is not present if the testimony is so limited. Therefore, the probative value of the grand jurors' testimony will outweigh the potential for prejudice, and their testimony, appropriately limited, is admissible under Rule 403.

Accordingly, the grand jurors may testify as to, *e.g.,* the temperature, layout and occupancy of the room, or whether anyone raised their voice or made any threatening physical gestures, or whether Awadallah showed signs of physical injury. However, they may not testify as to their mental impressions: *i.e.,* that Awadallah did or did not appear lucid or composed, or did or did not appear confused, or that the prosecutor did or did not appear to be intimidating.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 31, 2005

25

**For the Government:**

Robin Baker
Karl Metzner
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2308

**For Defendant:**

Jesse Berman, Esq.
Elizabeth Fink, Esq.
Sarah Kunstler, Esq.
351 Broadway
New York, New York 10013
(212) 431-4600